HOME SAVINGS & LOAN ASSOCIATION, APPELLANT, v. MOUNT ZION BAPTIST CHURCH (COLORED) ET AL., APPELLEES.

299 N. W. 287

FILED JULY 3, 1941. No. 31019.

*George E. Hager,* for appellant.

*John Adams, Jr., contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

After a permanent injunction had been entered in the case entitled *State v. Home Savings & Loan Ass'n,* 137 Neb. 231, 288 N. W. 691, in effect enjoining any interference with the exclusive use and occupation of lot 6, in block 179, original plat of the city of Lincoln, Nebraska, by the Mount Zion Baptist Church (Colored), a petition in equity was filed in the original foreclosure suit in the district court for Lancaster county. This petition was thereafter amended. The defendants named therein, including the defendant church, demurred to the last amended petition on the grounds: (1) That the court has no jurisdiction to grant relief prayed for in said amended petition; (2) that said amended petition does not state facts sufficient to constitute a cause of action. The district court, upon hearing, sustained these demurrers, and plaintiff electing to plead no

further its amended petition was dismissed. Plaintiff appeals.

The recital of the following facts tends to disclose the origin and development of the instant controversy:

In 1883 there was duly enacted by the legislature of this state "An Act to dedicate to the use of the Mount Zion Baptist Church (Colored) lot number 6 in block 179 in the city of Lincoln." Laws 1883, ch. 92. Within the period limited by the act this church 'accepted the same, entered into possession of the lot described, and thereafter continued to occupy and use the same for church purposes. The effect of the act, followed by acceptance and occupancy of such lot, constituted a grant to the Mount Zion Baptist Church (Colored) of an "estate in fee simple defeasible with a limitation upon its use." This church organization soon after the passage of the legislative act referred to took possession of this lot and built a small church building and parsonage thereon. In March, 1923, it was decided to build a larger church building thereon. The church, through its corporate organization, entered into a contract with one R. O. Stake for the construction of the church edifice which is now upon lot 6. This contractor proceeded with the building to a point where it was almost completed, when the work of construction ceased for the reason that the payments contracted for had not been made. However, church trustees formally authorized by the congregation secured a loan of $8,000 from the Home Savings & Loan Association. With the proceeds of this loan the indebtedness due contractor Stake was discharged and the church building was completed. This loan was evidenced by a negotiable bond for $8,000 and was secured by a real estate mortgage covering the church property. The real estate mortgage and $8,000 bond secured by the same were executed by the board of trustees. This mortgage was in the usual form, and recited that, "In consideration of the sum of Eight Thousand ($8,000) dollars do hereby sell and convey unto the Home Savings & Loan Association, of Lincoln, Nebraska, the following described premises, situated in Lancaster county,

Nebraska, to wit: Lot six (6), in block one hundred seventy-nine (179). * * * To have and to hold the premises above described, with the appurtenances thereto belonging, unto the said Home Savings & Loan Association and its successors." It appears that the source and condition of the title possessed by the Mount Zion Church was known to all parties to this transaction, and that no misrepresentations of facts were made by or on behalf of the church organization. Of course, whatever the limitations contained in the legislative act, as well as the legal effect thereof, the mortgage lien of the plaintiff was subordinate and subject thereto. As to the coverage of this real estate mortgage upon the permanent improvements, such as buildings situated upon the mortgaged premises at the time of its execution, the established rule appears to be: "Unless restricted to some particular interest or estate, a mortgage conveys all the title and interest which the mortgagor then has in the premises in question; and where it purports to convey a greater estate than the mortgagor owns, it passes so much as he has a right to convey. * * * On the other hand the mortgage will give the mortgagee no greater rights or interests than the mortgagor possessed, and will bind only the latter's actual interest or estate." 41 C. J. 476.

These principles have been accorded due recognition in this jurisdiction. In *Frost v. Schinkel*, 121 Neb. 784, 238 N. W. 659, we held: "Annexations affixed to an estate by the owner before mortgage, of such a character as are apparently calculated to be for the permanent use and enjoyment of the realty, are presumed to be intended to form a part of the realty and to pass with it by a mortgage."

While it appears in the present case that the building in controversy was almost completed at the time of the execution of appellant's mortgage, the rule appears to be that a building intended as a permanent improvement, even though still in course of construction, is deemed a part of the land and to possess the character of real estate. *Ward v. Yarnelle*, 173 Ind. 535, 91 N. E. 7.

So, it is also the law of this state that "Buildings or other

improvements of a permanent character, placed on real estate by the mortgagor while the property is encumbered by the mortgage, become a part of the mortgaged estate and subject to the lien of the mortgage." 41 C. J. 485. And, in like manner, they would become subject and subordinate to the limitations and conditions expressed or implied in the terms of the legislative grant.

Thus, from the admitted facts in this case, the building in controversy had been erected upon the real estate and made an inseparable part thereof as possessing all the attributes of real property and subject to all the conditions and limitations expressed or implied in the terms of the legislative act of 1883 prior to the execution of appellant's mortgage.

The use and occupancy of lot 6, block 179, Lincoln, Nebraska, being in the nature of a public charity, created by the grant and dedication of the legislature of the state, the state has a vital interest therein, and in the due enforcement of the conditions and limitations expressed or necessarily implied by the terms of the act of 1883 pertaining to that lot, including the permanent improvements thereon, which in law are considered as real property and part of the premises described. The attorney general is fully authorized and empowered to protect the interest of the public, as well as the beneficiaries of the charity involved. *State v. Home Savings & Loan Ass'n,* 137 Neb. 231, 288 N. W. 691.

It may be said in passing that as part of the permanent injunction in the case last cited is the item, "That the Mount Zion Baptist Church (Colored) of Lincoln, Nebraska, a religious association, be and the same hereby is forever enjoined from conveying or alienating in any manner said property (lot 6, block 179, in Lincoln, Nebraska) or any part thereof." This decree is and remains in full force and effect.

It also appears that the mortgagors in course of time defaulted in the payments required by the terms of their mortgage loan; that a proceeding to foreclose the mortgage upon said lot 6, block 179, in Lincoln, Nebraska, given to

secure the payment of such loan, was begun in the district court for Lancaster county in an action in which the Home Savings & Loan Association of Lincoln, Nebraska, a corporation, was plaintiff, and the Mount Zion Baptist Church (Colored) of Lincoln, Nebraska, George B. Todd, K. H. Brewer, George W. Owens, Dewey C. Jackson, N. Ross, Nebraska Baptist State Convention, Incorporated, Lincoln Baptist Union, and the State of Nebraska were defendants. In due time a decree of foreclosure and sale was entered. It is not claimed that the district court in this proceeding obtained jurisdiction over the state of Nebraska. Thereafter, pursuant to decree, the premises were sold to plaintiff for the amount of its decree. The sale was confirmed, and a deed conveying the mortgaged premises was executed and delivered to the purchaser. Thereupon the attorney general instituted an action entitled *State v. Home Savings & Loan Ass'n,* 137 Neb. 231, 288 N. W. 691, wherein, upon appeal, this court found in favor of the state; found that under the terms of the special act of the legislature of 1883 the Mount Zion Baptist Church (Colored) had no power or authority to alienate or encumber; that the lot had been dedicated in trust for the use of said Mount Zion Baptist Church (Colored), as a place of worship, etc., and directed the district court to enter a permanent injunction enjoining and restraining the Home Savings & Loan Association from in any manner interfering with the Mount Zion Baptist Church (Colored) in the use of said property, including the church building, which as real property constituted a part thereof. The effect of this injunction was determined by this court in *State v. Davis,* p. 875, *post,* 299 N. W. 291.

It may be said that "Rules applicable generally to construction of decrees in equity apply in the case of final decrees awarding * * * relief by injunction. Also the general principles applicable in respect of the conclusiveness of judgments and decrees generally apply in the case of final decrees awarding or refusing injunctions. A decree for a perpetual injunction operates as a final adjudication which stays the acts threatened." 32 C. J. 387.

Plaintiff, after the complete disposition of the case in *State v. Home Savings & Loan Ass'n, supra,* finally filed an amended petition in equity in the original foreclosure action, as to which the order of the trial court sustaining demurrers thereto constitutes plaintiff's present complaint. The gist of plaintiff's contentions, as recited in its brief, are as follows:

"Plaintiff further alleged in said petition, that at the time the original decree was entered in said foreclosure suit, the district court had also been mistaken; that it had been of the opinion that said mortgage was a valid and subsisting lien against said lot 6, block 179, of the city of Lincoln and entered its decree accordingly; whereas such was not the case, as now appears from the decision in this court in State, ex rel. Hunter, Attorney General, v. Home Savings & Loan Association. The plaintiff loan association, therefore, prayed that the sheriff's deed issued to it upon the sale, had in said case, be recalled and canceled; that the order approving the sale; the sale and all proceedings in said case back to and including the decree be set aside upon the grounds of mistake of all parties concerned. And that the plaintiff loan association be given leave to file an amended petition setting up the facts in accordance with the evidence already taken, in the light of the decision in State, ex rel. Hunter, v. Home Savings & Loan Association, and that a new decree be entered in said case impressing the lien of said mortgage upon the buildings located upon said lot 6, block 179, only, as chattels real."

As to whether a mere mistake of law, in the entire absence of mistake as to facts involved, is sufficient to invoke the powers of equity, query.

It is obvious, however, that the theory of plaintiff's case as set forth in the amended petition misconceived the character of the church building as a permanent improvement to lot 6, block 179. The fact is that we have here three distinct parties in interest in the subject-matter of litigation. The rights of the state of Nebraska were, as to all others, paramount. Even if it be assumed, as plaintiff urges, that in

giving the original mortgage foreclosed on the property (lot 6, block 179) as an entirety, said Mount Zion Baptist Church (Colored) intended to and did pledge said buildings as security for the payment of said loan, the rights of the state to relieve the charity from unlawful encumbrance still remains unaffected because the permanent improvements are a constituent part of the real estate involved. In short, the power to mortgage, so far as the church was concerned, was as nonexisting as to the permanent improvements on lot 6, block 179, as it was nonexistent as to the earth of which this lot was composed. In addition, the permanent injunction entered prior to the filing of the last amended petition expressly enjoins any interference by the Home Savings & Loan Association with the church building. *State v. Davis,* p. 875, *post,* 299 N. W. 291. It is obvious that what was sought to be raised by plaintiff's amended petition had been already determined in the proceedings theretofore had adversely to it. From a broader standpoint the applicable principle of equity here is embodied in the following: "Indeed, a court of chancery will not correct every character of mutual mistake. Where it appears that the parties to an instrument had equal knowledge or equal means of obtaining knowledge of the facts, and no surprise or imposition is shown, the mistake is often held to lay no foundation for equitable interference, being said to be strictly *damnum absque injuria.*" 19 Am. Jur. 77, sec. 57.

In view of the entire record, it is obvious that the action of the trial court in sustaining the demurrers filed to plaintiff's last amended petition is correct, and its judgment dismissing such petition is

AFFIRMED.